UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| MARWIN E. HOFER; <br> JASON SEURER; <br> MARGO INVESTMENTS, L.L.C.; <br> DANIEL L. FISCHER; <br> TIMOTHY J. HOFER; and <br> G & R DEVELOPMENT, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> LIBERTY NATIONAL BANK, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIV. 11-4129-KES <br><br><br><br><br> ORDER GRANTING DEFENDANT'S <br> MOTION FOR SUMMARY <br> JUDGMENT |

Plaintiffs, Marwin Hofer, Jason Seurer, Margo Investments, L.L.C., Daniel Fischer, Timothy Hofer, and G & R Development, LLC, allege claims for promissory estoppel and equitable estoppel against defendant, Liberty National Bank. Liberty moves for summary judgment on both claims. Docket 22. Plaintiffs oppose the motion. For the following reasons, Liberty's motion is granted.

**BACKGROUND**

The pertinent facts viewed in the light most favorable to plaintiffs are as follows:

Plaintiffs are a group of individual and institutional investors who were interested in purchasing a parcel of land located in Sioux Falls, South Dakota. The land was approximately 190 acres, and plaintiffs were considering using

the land for commercial development. Liberty is a federally chartered bank. This case arose from discussions between plaintiffs and Liberty pertaining to the possibility of plaintiffs receiving financing from Liberty so that plaintiffs could purchase the aforementioned parcel of land.

Plaintiffs had the land appraised on February 10, 2010, in order to gain perspective as to the property's value. The appraisal was requested by Darrel Viereck, a real estate broker, on behalf of Hofer. The appraisal was performed by Dennis Holles of Kaschmitter Appraisals, Inc. In performing the appraisal, Holles did not comply with certain rules and regulations created by the Office of the Comptroller of the Currency (OCC) and the Financial Institutions Reform and Recovery Act of 1989 (FIRREA).[1] An appraisal must comply with FIRREA if a bank relies on it in making a loan. The Kaschmitter appraisal valued the property at $13,192,500.

Plaintiffs first contacted Jacob Stahl, the Senior Vice President at Liberty, in July of 2010 to discuss the possibility of obtaining financing to purchase the property. On July 20, 2010, which was after their initial discussions, plaintiffs provided Stahl with the Kaschmitter appraisal. Plaintiffs

---

[1] The reason the Kaschmitter appraisal did not comply with FIRREA regulations is contested. Plaintiffs deny having any knowledge as to why the appraisal did not comply with FIRREA. The addendum to the appraisal, however, included a string of emails dated November 19 and 23, 2009, in which Holles was informed by Kelli Viereck, on behalf of Darrel Viereck, that FIRREA and OCC rules and regulations did not need to be considered when conducting the appraisal. Docket 41-7 at 46. Thus, every party who received the appraisal was on notice that it did not comply with FIRREA and OCC rules and regulations.

claim that Stahl informed them that Kaschmitter Appraisals, Inc., was on Liberty's approved list of appraisers and that the Kaschmitter appraisal would be acceptable.

The July 2010 discussions with Stahl did not lead to any commitment from Liberty that it would finance plaintiffs' acquisition of the property. Instead, an August 20, 2010, string of emails between plaintiffs and Stahl shows that plaintiffs were still only in the initial stages of obtaining financing. In the August 20 emails, plaintiffs stated that they were "not asking for 100% commitment" from Liberty at that time but wanted to know Stahl's "thoughts" on whether Liberty could put the "deal together[.]" Docket 41-13. Stahl did not respond that Liberty would be able to provide financing but instead indicated that he would have a better idea after further information was received. *Id.*

Following discussions with Stahl, plaintiffs met with the owner of the land to further discuss purchasing the property. Plaintiffs entered into a purchase agreement with the owner of the property on September 3, 2010, agreeing to a $7.5 million purchase price. The purchase agreement called for a $40,000 payment on September 4, 2010, a $460,000 payment on October 15, 2010, with the remaining balance due on December 1, 2010. The two initial payments, totaling $500,000, were nonrefundable, regardless of whether

plaintiffs obtained financing.[2] Plaintiffs made the initial two payments on the dates when they were due.

After entering into the purchase agreement, plaintiffs contacted Liberty in October 2010 in an attempt to get a loan commitment letter (LCL). Between October 13, 2010, and October 19, 2010, Liberty sent four versions of a proposed LCL to plaintiffs, making changes as requested through negotiations with plaintiffs. There was a covenant in all four versions of the LCL, including the executed version, that necessitated Liberty be "furnished an appraisal, in form and substance satisfactory to [Liberty], by a qualified appraiser approved by [Liberty], showing the value for the Mortgaged Property . . . acceptable to [Liberty] in value and condition." Docket 30-13 at 5. The LCL further dictated that the loan amount would not exceed 56 percent of the appraised value or $7,320,000, whichever is less. *Id.* The LCL also contained an integration clause that prescribed that the LCL "constitutes the entire understanding of the parties concerning the subject matter of [the LCL], and supersedes and replaces any and all prior communications, agreements and understandings of the parties, written or otherwise, concerning the subject matter of [the LCL]." Docket 30-13 at ¶ 22. Plaintiffs acknowledge that the LCL replaced any prior oral understandings plaintiffs thought they had with Liberty. Docket 24 at ¶ 48 (admitted in Docket 35 at 6).

---

[2] There were no conditions precedent to plaintiffs' obligation pursuant to the purchase agreement, and plaintiffs waived any right to a refund of the initial two payments of $40,000 and $460,000. Docket 41-5 at ¶ 12-13.

Following formation of the LCL, Liberty contacted Holles and asked him to bring the Kaschmitter appraisal up to date. Holles refused.[3] Because Holles refused, Liberty hired a different appraisal company, Shaykett Appraisals, to complete an appraisal of the property. The Shaykett appraisal valued the property at $10 million. Thereafter, Liberty informed plaintiffs that it would approve a loan in the amount of $6 million assuming plaintiffs could satisfy the other conditions set forth in the LCL. The terms of the LCL required Liberty to only loan plaintiffs $5.6 million (56 percent of the appraised value).

The $6 million loan amount was $1,320,000 below the amount plaintiffs had wanted to borrow from Liberty. Docket 35 at 9. Although plaintiffs had the financial ability to come up with the additional funds needed to purchase the property, they chose not to put up the funds and did not purchase the property. *Id.* at 10.

Because the $500,000 payments were nonrefundable, plaintiffs are now seeking damages in that amount from Liberty. Plaintiffs' claims for promissory estoppel and equitable estoppel arise from the statements Stahl allegedly made to plaintiffs prior to their entering into the purchase agreement.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[3] Holles's affidavit indicates that Holles declined to update the Kaschmitter appraisal because it was not intended to be relied upon by a financial institution in connection with making a loan. Docket 27 at ¶ 11.

as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)). The moving party must inform the court of the basis for its motion and also identify the portion of the record that shows that there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). Once the moving party has met its initial burden, the "nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). For purposes of summary judgment, the facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

Both parties relied on South Dakota law in their briefs in support of their motions for summary judgment. Because the parties do not dispute that South Dakota substantive law applies to this cause of action, the court will apply South Dakota law.

**DISCUSSION**

**I.     Promissory Estoppel**

Plaintiffs claim that they detrimentally relied on the statements made by Stahl when they entered into the purchase agreement and, thus, have a claim for promissory estoppel.[4] Promissory estoppel can entitle an individual who was unjustly harmed to damages "[e]ven when there is no valid contract between the parties[.]" *Minor v. Sully Buttes School Dist. No. 58-2*, 345 N.W.2d 48, 50-51 (S.D. 1984). Under South Dakota law, promissory estoppel applies when a "promisee alters his position to his detriment in the reasonable belief that a promise would be performed." *Canyon Lake Park, L.L.C. v. Loftus Dental, P.C.*, 700 N.W.2d 729, 739 (S.D. 2005). The starting point of any promissory estoppel claim is the promise itself. *Adams v. Rapid City Reg'l Hosp., Inc.*, Civ. No. 04-5067, 2006 WL 2459483, at *20 (D.S.D. Aug. 23, 2006) (citing *Durkee v. Van Well*, 654 N.W.2d 807, 815 (S.D. 2002)). Assuming a promise is identified, the elements of promissory estoppel are: (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the loss to the promisee must have been foreseeable by the promisor; and (3) the promisee

---

[4] Plaintiffs point to Stahl's statements that Kaschmitter was on an approved list of appraisals and that Kashmitter's appraisal would be acceptable. Docket 37 at 3-4. "Plaintiffs are not claiming Defendant was obligated to make use of the Kaschmitter appraisal nor that Defendant was obligated to make a loan to Plaintiffs. Plaintiffs' claim is simply that they reasonably and detrimentally relied upon Defendant's statements concerning the use of the Kaschmitter appraisal." Docket 37 at 10.

7

must have acted reasonably in justifiable reliance on the promise made. *Canyon Lake,* 700 N.W.2d at 739.

### A. Lack of a Promise

Plaintiffs argue that the "promise" was created solely from Stahl's statements that Kaschmitter was on Liberty's approved list of appraisers and that the Kaschmitter appraisal was acceptable. Plaintiffs readily admit that Stahl's statements did not obligate Liberty to make a loan to plaintiffs nor did the statements obligate Liberty to make use of the Kaschmitter appraisal. Docket 37 at 10. The initial issue is whether Stahl's statements constitute a promise. "A promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Restatement (Second) of Contracts § 2 (1981); *see United States v. Gerth*, 991 F.2d 1428, 1434 (8th Cir. 1993) (providing that "[a] promise is an assurance from one party that performance will be rendered in the future").[5]

The court finds that Stahl's statements do not amount to a promise. Stahl's statements were simply assertions about Kaschmitter and the appraisal that was created. The statements were not a manifestation of an

---

[5] The South Dakota Supreme Court has not defined what constitutes a promise for purposes of a promissory estoppel claim. The supreme court has, however, relied on the Restatement for guidance on other issues pertaining to promissory estoppel. *Minor*, 345 N.W.2d at 51. Thus, the court here finds that the South Dakota Supreme Court would follow the definition of "promise" as defined in the Restatement.

8

intent to act.[6] Rather, Stahl's statements were nothing more than an assessment of the quality of the appraisal. *See Stockmen's Livestock Market, Inc. v. Norwest Bank of Sioux City*, 135 F.3d 1236, 1242 (8th Cir. 1998) (applying South Dakota law and finding that a bank employee's statement that "there was no problem" with a check did not amount to a promise and was instead "nothing more than an equivocal assessment of the likelihood that the check would be honored"). Put differently, Stahl's statements were too "vague, uncertain and unsettled" to create a promise or agreement between the parties that could form the basis for a promissory estoppel claim. *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 848 (S.D. 1990); *see Adams*, 2006 WL 2459483, at *20 (finding that a plaintiff's claim for promissory estoppel "fails for lack of a promise").

### B. Plaintiffs Did Not Act Reasonably

Liberty argues that plaintiffs' reliance, *i.e.*, entering into a purchase agreement that required a $500,000 nonrefundable down payment, was unreasonable as a matter of law. As noted above, plaintiffs must show that they "acted reasonably in justifiable reliance on the promise made." *Canyon Lake,* 700 N.W.2d at 739. Liberty directs the court to *Werner v. Norwest Bank*, 499 N.W.2d 138 (S.D. 1993), in support of its argument. The plaintiff in *Werner* claimed that a bank manager told him "no problem" after plaintiff

---

[6] Plaintiffs explicitly argue that Stahl's statements did not obligate Liberty to use the Kaschmitter appraisal, and Liberty was not obligated to provide them a loan.

9

asked if the bank could make an $80,000 loan. *Id.* The bank later refused to loan the plaintiff $80,000, and the plaintiff brought suit, alleging promissory estoppel. The South Dakota Supreme Court rejected the plaintiff's promissory estoppel claim because the plaintiff "could not have reasonably relied on [the bank] to grant him a loan" when there was so much uncertainty as to the other terms of the loan, including the exact amount of money, interest rate, time and method of repayment, and there was no exchange of documents. *Id.* The supreme court further stated that the "agreement upon which [the plaintiff] allegedly relied is too vague, uncertain, and unsettled to support an estoppel claim." *Id.* at 142 (internal quotations omitted).

*Garrett v. BankWest, Inc.*, 459 N.W.2d 833 (S.D. 1990), provides another illustration of when the South Dakota Supreme Court found that a plaintiff's reliance was unreasonable. In *Garrett*, the plaintiff liquidated some of his assets following a discussion with a bank about the possibility of redeeming a mortgage that was in default. *Id.* at 848. After only oral discussions about the possibility of redemption, the bank chose not to redeem, and the plaintiff sought damages under a theory of promissory estoppel. *Id.* The supreme court held that the plaintiff's reliance, *i.e.*, liquidating some of his assets, was unreasonable because the terms of any possible agreement relating to redemption were vague, uncertain, and unsettled. *Id.* The supreme court went on to find that it was unreasonable for the plaintiff "to act upon vague, and in many respects, non-existent terms of an oral agreement." *Id.*

Based on the foregoing, the court finds that undisputed facts in this case support a finding that plaintiffs' actions were unreasonable under South Dakota law. The only statements that plaintiffs allege they relied on prior to entering into the purchase agreement were that Kaschmitter was on the approved list of appraisers and that the Kaschmitter appraisal would be acceptable. Plaintiffs have not identified how or why Stahl's statement that the appraisal was acceptable caused them to enter into the purchase agreement. Plaintiffs have not indicated what "acceptable" means in terms of an appraisal. One would think that an "acceptable" appraisal in these circumstances would be one that a bank would use in determining whether to issue a loan and in determining how large of a loan to issue. Plaintiffs, however, have made it clear that they "are not contending that the statements . . . committed [Liberty] to using the Kaschmitter appraisal" or that Liberty "was obligated to make a loan to Plaintiffs." Docket 37 at 8, 10. Without any discussion as to how or why Stahl's statements caused them to enter into the purchase agreement, the court finds that doing so was unreasonable in these circumstances.

Even if plaintiffs argued that Stahl's statements obligated Liberty to use the Kaschmitter appraisal in making a loan, such an argument fails to support a promissory estoppel claim because plaintiffs' reliance would still be unreasonable. Plaintiffs would have the court believe that it is reasonable for experienced businessmen to rely on off-the-cuff oral statements by a bank employee, without discussions of loan amounts, interest rates, time and

11

method of repayment, and without an exchange of documents, to the extent that they enter into a purchase agreement that contains a $500,000 nonrefundable down payment. Just as in *Werner*, such assumptions and actions are unreasonable. The terms of any possible agreement concerning the use of the appraisal were too vague, uncertain, and unsettled for plaintiffs' reliance to be reasonable. *Garrett*, 459 N.W.2d at 848; *see Vander Heide v. Boke Ranch, Inc.*, 736 N.W.2d 824, 834 (S.D. 2007) ("[Plaintiffs'] alleged reliance was not in anyway justified given the absence of a promise or at best, one that was vague and uncertain."). Furthermore, plaintiffs acknowledge that they know that banks do not make loans or binding commitments based on passing oral statements. *See* Docket 24 at 9 (admitted in Docket 35 at 5). Plaintiffs cannot ignore what they know to be banking custom and then claim that their reliance was reasonable.

Moreover, plaintiffs claim that Stahl's statements took place sometime in July 2010. There is an email sent to Stahl, however, dated on August 20, 2010, in which plaintiffs acknowledge that Liberty is under no commitment to move forward whatsoever with loan negotiations. Docket 41-13. In the email, Seurer stated, "I'm not asking for 100% commitment today, but knowing what you know at this point . . . do you feel quite confident that your bank can put this deal together for us?" *Id.* Stahl's response did not answer in the affirmative but instead responded by saying that Stahl "should have a much better feel" in the future when more documents have been received. *Id.* Thus,

12

plaintiffs were put on notice that Liberty was still only considering whether to issue a loan just prior to their entering into the purchase agreement on September 3, 2010. Because of this notice, it was unreasonable for plaintiffs to enter into the purchase agreement based upon Stahl's statements.

### C. Loan Commitment Letter Precludes Promissory Estoppel Claim

In the alternative, Liberty also argues that the existence of the LCL precludes plaintiffs' promissory estoppel claim because the LCL specifically addresses the appraisal issue. Promissory estoppel "applies only to those situations in which an enforceable promise would otherwise not exist[.]" *Farmers Elevator Co. of Elk Point v. Lyle*, 238 N.W.2d 290, 292 (S.D. 1976). Liberty claims that the LCL is an enforceable promise, and therefore, promissory estoppel does not apply.

The South Dakota Supreme Court, when applying South Dakota law, has not addressed the issue of whether a later-formed contract precludes the application of promissory estoppel to oral statements made prior to the entering of the contract. Thus, the court turns to other state courts that have discussed the issue.

"[A] large body of law supports the proposition that a claim for promissory estoppel cannot be used to enforce an oral promise where the parties have executed a valid, fully integrated document subsequent to the alleged oral representations." *DeJong v. City of Sioux Ctr.*, 980 F. Supp. 1010, 1014 (N.D. Iowa 1997) *aff'd*, 168 F.3d 1115 (8th Cir. 1999) (citing examples

from several jurisdictions). Under Missouri law, "[p]romissory estoppel cannot be used to engraft a promise on the contract that is different from the written terms of the contract." *Clearly Canadian Beverage Corp. v. Am. Winery, Inc.*, 257 F.3d 880, 890 (8th Cir. 2001) (citing *Halls Ferry Inv., Inc. v. Smith*, 985 S.W.2d 848, 853 (Mo. Ct. App. 1998)). In Iowa, "promissory estoppel cannot be used . . . to enforce prior oral agreements between the parties that are not part of the [contract]" when the parties execute a fully integrated written contract following such oral agreements. *DeJong*, 980 F. Supp. at 1014. A Minnesota appellate court has held that "an express contract covering the same subject matter will preclude the application of promissory estoppel." *Greuling v. Wells Fargo Home Mortgage, Inc.*, 690 N.W.2d 757, 761 (Minn. Ct. App. 2005) (citing *Del Hayes & Sons, Inc. v. Mitchell*, 230 N.W.2d 588, 593 (Minn. 1975).

This line of reasoning is derived from the parol evidence rule. *See DeJong*, 980 F. Supp. at 1014. "When an agreement is fully integrated, the parol evidence rule prevents the introduction of any extrinsic evidence to contradict (or even supplement) the terms of the written agreement." *Id.* Accordingly, a claim for promissory estoppel cannot stand if it relies on oral statements that would be barred under the parol evidence rule because of the fact that the parties entered into a fully integrated contract.

Although the South Dakota Supreme Court has not addressed whether a later-formed contract precludes the application of promissory estoppel under South Dakota law, it has considered the issue while applying Washington law.

14

*Glimcher Supermall Venture, LLC v. Coleman Co.*, 739 N.W.2d 815, 826 (S.D. 2007). While applying Washington law, the supreme court determined that a later-formed contract precludes application of promissory estoppel to statements made prior to entering into said contract. *See id.* ("Because there is a contract, promissory estoppel cannot apply."). South Dakota law is similar to Washington law in this area, and thus, the court assumes that the South Dakota Supreme Court would come to a similar conclusion when applying South Dakota law. Further, the South Dakota Supreme Court has recognized and applied the parol evidence rule. *See, e.g., Hofeldt v. Mehling*, 658 N.W.2d 783, 787 (S.D. 2003) ("The parol evidence rule bars extrinsic evidence of prior negotiations offered to contradict or supplement a written contract."). Therefore, the court predicts that the South Dakota Supreme Court would conclude, just as several other courts have, that a fully integrated contract covering the same subject matter precludes the application of promissory estoppel.

The question now is whether the facts here require application of such a rule. Plaintiffs do not dispute that the LCL is a valid contract that includes an integration clause which supersedes and replaces any and all prior communications, agreements, and understandings of the parties concerning the subject matter of the LCL. Docket 1-1 at 6; Docket 24 at 10 (admitted in Docket 35 at 6). Further, "plaintiffs agreed and understood the terms of the LCL replaced any prior oral understandings Plaintiffs thought they had with

the Bank." Docket 24 at 10 (admitted in Docket 35 at 6). As noted, the LCL required plaintiffs to furnish Liberty "an appraisal, in form and substance satisfactory to [Liberty], . . . acceptable to [Liberty] in value and condition." Docket 41-24 at 4. The fact that the Kaschmitter appraisal did not comply with FIRREA regulations is one reason that Liberty required a different appraisal to support the loan. This is because an appraisal must comply with FIRREA regulations if a bank is going to rely on it in making a loan secured by property. Docket 24 ¶ 30 (admitted in Docket 35 at 4). Therefore, the Kaschmitter appraisal was not satisfactory or acceptable to Liberty as required by the LCL. Plaintiffs waived any right they had in obliging Liberty to use the Kaschmitter appraisal when they agreed to the terms of the LCL. Thus, because the LCL is a fully integrated contract covering the issue of which appraisal was going to be used, plaintiffs are precluded from now claiming promissory estoppel based on Stahl's oral statements regarding the Kaschmitter appraisal.

## II. Equitable Estoppel

Plaintiffs also claim that Stahl's statements concerning the Kaschmitter appraisal form a claim for equitable estoppel. There are four elements of equitable estoppel under South Dakota law: (1) the existence of false representations or concealment of material facts; (2) the party to whom it was made must have been without knowledge of the real facts; (3) the representations or concealment must have been made with the intention that

it should be acted upon; and (4) the party to whom it was made must have relied thereon to his prejudice or injury. *Hahne v. Burr*, 705 N.W.2d 867, 873 (S.D. 2005). Equitable estoppel "requires an element of deception or gross negligence amounting to constructive fraud." *American Bank & Trust v. Shaull*, 678 N.W.2d 779, 791 (S.D. 2004). Equitable estoppel cannot exist "if any of these essential elements are lacking, or if any of them have not been proved by clear and convincing evidence." *Cooper v. James*, 627 N.W.2d 784, 789 (S.D. 2001).

  The false representation plaintiffs rely on is Stahl's statement that the Kaschmitter appraisal would be acceptable. Liberty claims that the Kaschmitter appraisal was not acceptable in part because it did not comply with FIRREA regulations. A plaintiff cannot "profess a concealment or false representation of material facts of which he was aware, nor can he claim reliance upon such falsehoods to his prejudice." *Crouse v. Crouse*, 552 N.W.2d 413, 417 (S.D. 1996). As the facts demonstrate here, plaintiffs were aware, or at least should have been aware, that the Kaschmitter appraisal did not comply with FIRREA regulations. Indeed, an email from one of plaintiffs' representatives was included in the appraisal's addendum. The email acknowledged that FIRREA and OCC rules and regulations did not need to be considered when performing the appraisal. Because the appraisal itself noted that it did not comply with FIRREA regulations, plaintiffs knew, or should have known, that the appraisal was not acceptable for purposes of making a

17

loan. Put differently, plaintiffs had knowledge of the real facts and cannot satisfy element two of their equitable estoppel claim.

The court further concludes that the previous promissory estoppel discussion pertaining to plaintiffs' unreasonable reliance is equally applicable to plaintiffs' equitable estoppel claim. Although "reasonableness" is not specifically mentioned in the reliance element of equitable estoppel, South Dakota courts have imputed a reasonableness requirement when it comes to analyzing a plaintiff's reliance on the alleged false representation. *See, e.g.*, *In re Cancellation of Stabio Ditch Water Right on Spearfish Creek*, 417 N.W.2d 391, 397 (S.D. 1987) (accepting the conclusion that the reliance was unreasonable in light of the facts that existed); *Crouse*, 552 N.W.2d at 417 (finding that one cannot claim reliance on falsehoods when he is aware of such falsehoods). As discussed in detail above, plaintiffs' reliance on Stahl's statements was not reasonable. Additionally, plaintiffs had knowledge of the alleged falsehood and cannot now claim that they prejudicially relied upon such falsehood. Thus, plaintiffs' reliance was unreasonable and does not support an equitable estoppel claim.

The court also finds that its previous conclusion that plaintiffs' promissory estoppel claim is precluded because of the integration clause within the LCL, is equally applicable to plaintiffs' equitable estoppel claim. Because the LCL was a fully integrated contract that covered the alleged

"misrepresentation" concerning the Kaschmitter appraisal, plaintiffs are precluded from asserting an equitable estoppel claim.

Plaintiffs' equitable estoppel claim also runs afoul on a more basic level. A claim of equitable estoppel provides for an equitable remedy and not a cause of action for damages. *See* 28 Am. Jur. 2d Estoppel and Waiver § 28 ("Equitable estoppel, rather than being an actual cause of action, is . . . an equitable doctrine. . . . The purpose of equitable estoppel is to preserve rights already acquired and not to create new ones."); *see generally Cooper*, 627 N.W.2d at 789 (noting that equitable estoppel is used to assert a statute of limitations defense).[7] Thus, the court finds that plaintiffs' claim for equitable

---

[7] An Arizona court explained the difference between equitable estoppel and promissory estoppel and the remedies available under each:

> Equitable estoppel involves . . . an affirmative misrepresentation of a present fact or state of facts and detrimental reliance by another thereon. . . . Promissory estoppel, on the other hand, generally does not involve a misrepresentation but a promise by one party upon which another relies to his detriment and which the promisor should reasonably have foreseen would cause the promisee to so rely. . . . It operates not in regard to a past or presently existing state of facts, but rather to a situation which one party promises will be true in the future. . . . We believe the major distinction between equitable estoppel and promissory estoppel is that equitable estoppel is available only as a defense, while promissory estoppel can be used as a cause of action for damages.

*Tiffany Inc. v. W. M. K. Transit Mix, Inc.*, 493 P.2d 1220, 1224 (Ariz. Ct. App. 1972); *see also Huhtala v. Travelers Ins. Co.*, 257 N.W.2d 640, 647 (Mich. 1977) ("Equitable estoppel is essentially a doctrine of waiver. When operative, it serves to extend the applicable statute of limitations by precluding the defendant from raising the bar of the statute but has no effect on the determination of the applicable statute. Promissory estoppel . . . substitutes for consideration in a case where there are no mutual promises, enabling the

estoppel cannot be used to provide the remedy of damages as sought by plaintiffs under these facts.

**CONCLUSION**

Liberty has shown that no genuine issues of material fact exist and that it is entitled to judgment on plaintiffs' estoppel claims as a matter of law. The promissory and equitable estoppel claims fail because there was no "promise" made by Liberty, plaintiffs' reliance was unreasonable, and the LCL precluded any claim based on oral representations that were made prior to entering into the LCL. Accordingly, it is

ORDERED that Liberty's motion for summary judgment (Docket 22) is granted.

Dated November 28, 2012.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

---

promisee to assert a separate claim against the promisor.").